IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PCA CAPITAL PARTNERS,<br>formerly known as<br>PCS RECEIVABLES CORPORATION, | )<br>)<br>)<br>) | |
| Plaintiff, | )<br>) | 16 C 11470 |
| v. | )<br>) | Judge John Z. Lee |
| G&M INTERNATIONAL, LLC,<br>and GEORGE VICTOR MATTHEWS, | )<br>)<br>) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff PCA Capital Partners (formerly known as PCS Receivables Corporation ("PCS")), has brought suit for breach of contract against Defendants G&M International, LLC ("G&M") and George Victor Matthews. PCS has filed a motion for summary judgment as to its claims and G&M's affirmative defenses. For the reasons stated herein, PCS's motion is granted in part and denied in part.

**Factual Background[1]**

PCS financed installment contracts related to the retail purchase of consumer goods and services. Pl.'s LR 56.1(a)(3) Stmt. ¶ 6, ECF No. 121. For example, when an individual wished to purchase an item on credit, she would submit a consumer application to the seller, who would then pass it on to PCS for approval and funding. In October 2005, G&M entered into an agreement with PCS whereby G&M agreed to

---
[1] The following facts are undisputed or deemed admitted, unless otherwise noted.

obtain installment contracts from retail sellers for PCS (the "Services Agreement"). *Id.* ¶¶ 7–8. In turn, PCS agreed to pay G&M a fee for any applications that PCS accepted and funded. *Id.* ¶ 9.

In January 2006, PCS and G&M entered into a financing agreement, pursuant to which PCS lent G&M approximately $4 million. *Id.* ¶ 10. The financing agreement was amended several times until March 2009, when the parties entered into the financing agreement at issue here (the "Financing Agreement"), as well as a related Note, under which PCS loaned G&M approximately $6 million. *Id.* ¶¶ 10, 11, 13. At the same time, Matthews, who was the manager of G&M, entered into a Guaranty Agreement which made him personally liable for G&M's obligations to PCS under the Financing Agreement and Note. *Id.* ¶¶ 35–37.

In September 2009, G&M defaulted on the Financing Agreement. *Id.* ¶ 39. That month, PCS sent a notice of default (the "Default Notice") to both G&M and Matthews. *Id.* ¶¶ 41–42. Neither has paid the outstanding amount due under the Financing Agreement and Note. *Id.* ¶ 60.

Based on the foregoing events, PCS brings claims for breach of contract against G&M (Count I) and Matthews (Count II). Am. Compl. at 11–12, ECF No. 91. In its amended answer, G&M asserted affirmative defenses of waiver, equitable estoppel, and unjust enrichment. *See generally* Am. Answer, ECF No. 101. The Court has dismissed the unjust-enrichment defense. Order Mot. Strike, ECF No. 115.

**Legal Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To survive summary judgment, the nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and instead must "establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012). In reviewing a motion for summary judgment, the Court gives the nonmovant "the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013).

**Analysis**

**I.     Breach-of-Contract Claims Against G&M and Matthews**

PCS seeks summary judgment as to its breach-of-contract claims against G&M and Matthews. To prevail on a claim for breach of contract under Illinois law,[2] a plaintiff must establish: (1) offer and acceptance; (2) consideration; (3) the terms of the contract; (4) plaintiff's performance of all required contractual conditions; (5) the

---

[2]     The parties do not dispute that Illinois law applies. Accordingly, the Court applies Illinois substantive law in reviewing PCS's motion for summary judgment. *See Mass. Bay Ins. Co. v. Vic Koenig Leasing, Inc.*, 136 F.3d 1116, 1120 (7th Cir. 1998) ("[T]he operative rule is that when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the court sits." (citation and quotation marks omitted)).

3

defendant's breach of the terms of the contract; and (6) damages resulting from the breach. *E.g., Penzell v. Taylor*, 579 N.E.2d 956, 961 (Ill. App. Ct. 1991).

PCS contends that it has established the requisite elements because PCS and G&M entered into an agreement pursuant to which PCS loaned G&M $6 million, and PCS performed its end of the bargain. Pl.'s Mem. Supp. at 7, ECF No. 120. Moreover, PCS claims that G&M failed to pay the full amount due when it defaulted and that the amount remains unsatisfied. *Id.* And as to Matthews, PCS contends that the Guaranty Agreement requires him to pay all of G&M's outstanding obligations pursuant to the Financing Agreement and Note and that he has failed to do so. *Id.* at 8–9.

G&M concedes that, except for the calculation of damages, PCS has established all the elements of a breach. But it argues that triable issues of fact remain as to its affirmative defenses. *See* Def. G&M's Resp. at 1, 7–14, ECF No. 123. Matthews likewise argues that PCS has not sufficiently established the amount of damages to obtain summary judgment. Def. Matthews's Resp. at 3–4, ECF No. 125. He also contends that he did not breach the Guaranty Agreement because the Financing Agreement does not lay out his personal obligations. *Id.* at 3.

### A. Matthews's Guaranty Agreement

Addressing the last issue first, Matthews's argument borders on being frivolous. Although the Financing Agreement between PCS and G&M does not impose any obligation upon Matthews, his obligations are set out in the Guaranty Agreement. There, he agreed to take on G&M's obligations "when due, whether at

4

maturity, by acceleration, by demand or otherwise, and at any and all times thereafter . . . ." Pl.'s LR 56.1(a)(3) Stmt. ¶¶ 35–37. The Guaranty remains "in full force and effect as to [Matthews] until the [o]bligations have been paid in full," *id*. ¶ 37, and they have not been paid in full. As such, no reasonable jury could find that Matthews did not agree to and breach the Guaranty Agreement.

### B. Damages

Defendants contend that PCS is not entitled to summary judgment with respect to the amount of damages to which it seeks. Def. Matthews's Resp. at 3–4; Def. G&M's Resp. Pl.'s 56.1(a)(3) Stmt. ¶ 58, ECF No. 124. In support of its damages computation, PCS has provided a summary table which shows the balance due from G&M since 2009. Pl.'s Ex. H, ECF No. 121-2 at 71–73. The table also displays several columns that are inputs to the balance computation. *Id*. In addition, PCS's President Kenneth Nichol submitted a declaration explaining how the amounts were computed and stating that the documents underlying the summary were regularly kept records of regularly conducted business activity and that he had personal knowledge of the records' veracity and maintenance. Pl.'s Ex. 2, Nichol Decl. ¶¶ 2, 28, ECF No. 121-2.

Defendants contend that PCS has not made available the underlying documents that support its summary damages exhibit, as required by Federal Rule of Evidence 1006. Def. Matthews's Resp. at 3–4; Def. G&M's Resp. Pl.'s 56.1(a)(3) Stmt. ¶ 58. In response, PCS admits that its damages exhibit is only a summary, but argues that it need not satisfy Rule 1006's requirements because the data underlying

5

the summary is admissible under Rule 803(6)'s business-records hearsay exception. Pl.'s Reply at 11–12, ECF No. 127.

PCS is not quite right. If it wants to submit evidence in the form of a summary, the underlying documentation must be admissible *and* it must comply with Rule 1006. *See United States v. Benabe*, 436 F. App'x 639, 650 (7th Cir. 2011). As the Seventh Circuit stated, in *United States v. White*, "a party can introduce the information in a summary exhibit under Federal Rule of Evidence 1006, in order . . . 'to prove the content of voluminous writings . . . that cannot be conveniently examined in court.'" 737 F.3d 1121, 1135 (7th Cir. 2013) (citing Fed. R. Evid. 1006). "If admitted this way, the summary itself is substantive evidence—in part because the party is not obligated to introduce the underlying documents themselves." *Id*. "Because a Rule 1006 exhibit is supposed to substitute for the voluminous documents themselves, however, the exhibit must accurately summarize those documents." *Id*. And so, while Rule 1006 does not require that the documentation underlying the summary be introduced into evidence, it does require that the documents be made available to the opposing party for examination and copying at a reasonable time and place. Fed. R. Evid. 1006.

Here, Matthews and G&M suggest that PCS has not made available the documentation underlying its damages summary. PCS has no response to this other than that Rule 1006 does not apply. It does. And so, the Court cannot conclude based

6

on the record that PCS's damages evidence complies with Rule 1006.[3] Accordingly, PCS's motion for summary judgment is denied with respect to the amount of damages to which it is entitled.

### C. G&M's Affirmative Defenses

PCS also seeks summary judgment as to G&M's affirmative defenses. At summary judgment, it is a defendant's burden to create a triable issue of fact as to any affirmative defenses it asserts. *See Houlihan v. McCourt*, No. 00 C 3390, 2002 WL 1759822, at *3 (N.D. Ill. July 29, 2002).

#### 1. Waiver

The Court first considers G&M's waiver defense. "Waiver arises from an affirmative act, is consensual, and consists of an intentional relinquishment of a known right." *Home Ins. Co. v. Cincinnati Ins. Co.*, 821 N.E.2d 269, 282 (Ill. 2004) (citing *Crum & Forster Managers Corp. v. Resolution Tr. Corp.*, 620 N.E.2d 1073, 1080 (Ill. 1993)). "A waiver may be either expressed or implied, arising from acts, words, conduct, or knowledge." *Id.* And "[a]n implied waiver arises when conduct of the person against whom waiver is asserted is inconsistent with any intention other than to waive" the right. *Id.*

G&M contends that PCS has impliedly waived its claims because it changed its breach-of-contract theory during this case. G&M points out that, in PCS's original complaint, it alleged that G&M had breached the Financing Agreement several times

---

[3] Because Defendants have not raised the issue, the Court expresses no opinion at this time as to whether the documentation underlying the summary is admissible.

7

between 2013 and 2016. Def. G&M's Resp. at 7–8. By contrast, PCS alleges in its amended complaint that the breach occurred in 2009. Am. Compl. ¶¶ 39–40. According to G&M, PCS waived its claim as to the 2009 breach when it originally alleged the breach happened later.[4] Def. G&M's Resp. at 7–8.

G&M is mistaken. It is not unusual for a party to amend its pleadings to account for new evidence or new understandings of its legal claims. And so, PCS's original pleading could not have unmistakably disavowed PCS's right to seek amendment of its claim at a later time. PCS is accordingly entitled to summary judgment as to G&M's affirmative defense of waiver.

### 2. Equitable Estoppel

The Court next considers G&M's affirmative defense of equitable estoppel. A defendant asserting this defense must establish that: (1) the plaintiff misrepresented or concealed material facts; (2) the plaintiff knew that such misrepresentations were false; (3) the defendant did not know that such misrepresentations were false; (4) the plaintiff reasonably expected to induce defendant to act on the basis of those representations; (5) the defendant acted in reliance on the misrepresentations, in good faith, to its detriment; and (6) the defendant would be prejudiced by its reliance if plaintiff were permitted to deny having made the misrepresentation. *Parks v. Kownacki*, 737 N.E.2d 287, 296 (Ill. 2000).

---

[4] G&M also suggests in passing that PCS's original allegations are evidence that no breach occurred in 2009. Def. G&M's Resp. at 8. But these unsupported, and undeveloped arguments are deemed waived, particularly in light of G&M's failure to otherwise dispute that PCS has established the elements of a breach. *See Estate of Moreland v. Dieter,* 395 F.3d 747, 759 (7th Cir. 2005) ("Perfunctory or undeveloped arguments are waived.").

8

G&M's estoppel theory is ill-defined, and G&M lumps its argument together with passing references to waiver, "fraudulent concealment," and "unclean hands." Def. G&M's Resp. at 9–13. At its core, G&M appears to contend that, years after the purported breach, PCS had a "sinister secret scheme" to drive G&M out of business by arranging to sell all of G&M's assets to another company. *Id.* According to G&M, the goal was to make it impossible for G&M to perform under the Financing Agreement. *Id.* G&M contends that, as part of this scheme, a PCS representative communicated to G&M in 2014 that the Note no longer existed and so, perhaps, G&M owed nothing at all.[5] *Id.* at 11.

But, whatever G&M might believe this has to do with the doctrine of equitable estoppel, G&M has not presented any admissible evidence that it reasonably relied on any misrepresentation by PCS to its detriment, or that G&M would be prejudiced if PCS were permitted to deny having made the representation. *See generally* Def. G&M's LR 56.1(b)(3)(C) Stmt., ECF No. 123.[6] And so, G&M cannot establish the necessary elements of equitable estoppel. *See Parks*, 737 N.E.2d at 296.

---

[5] The difficulty of unearthing G&M's estoppel theory is compounded by its failure to cite to any statements of fact in particular, but rather to cite to the entirety of its Local Rule 56.1(b)(3)(C) statement. Def. G&M's Resp. at 8. And, for the most part, G&M fails to cite to anything at all. It does cite to its own answer, but "at the summary judgment stage . . . the question is not what the pleadings say but what the evidence shows." *Taylor v. United States*, 287 F.3d 658, 661 (7th Cir. 2002). G&M also (occasionally) cites to specific exhibits rather than its Rule 56.1 statements of fact. This is also insufficient. *See Mervyn v. Nelson Westerberg, Inc.*, 142 F. Supp. 3d 663, 664 (N.D. Ill. 2015) (collecting numerous cases from this district for the proposition that Local Rule 56.1 requires that parties' arguments cite to specific statements of fact).

[6] To the extent G&M seeks to rely on paragraph 15 of its LR 56.1(b)(3)(C) statement, it is unsupported by the citation to the record, with the exception of the proposition that PCS sent George Matthews a Default Notice in 2009. The Court disregards the unsupported portions of paragraph 15 accordingly. *See, e.g., Hudson v. Miramed Revenue Grp.*, No. 15 C

9

PCS is thus entitled to summary judgment as to G&M's affirmative defense of equitable estoppel.

### 3. Other Affirmative Defenses

G&M also contends that it has provided evidence to support the affirmative defenses of unjust enrichment, unclean hands, and fraudulent concealment. Def. G&M's Resp. at 14. But the Court already struck the purported unjust-enrichment defense because this is not an affirmative defense. Order Mot. Strike. As for its unclean-hands or fraudulent-concealment defenses, G&M did not assert them in its amended answer, and PCS would be prejudiced if it were required to contest them at this late stage. These defenses have thus been waived. *See Marcus v. Sullivan*, 926 F.2d 604, 615 (7th Cir. 1991).

## II. PCS's Claim for Fees Against Matthews

Presuming that its motion for summary judgment would be granted in its entirety, PCS provided documentation of the fees that it has incurred in this case. Matthews contends that he should not have to pay PCS's fees, despite agreeing to do so in the Guaranty Agreement. Def. Matthews's Resp. at 4; *see* Pl.'s LR 56.1(a)(3) Stmt. ¶ 36. The gist of his argument is that this litigation should not have happened because G&M should just have paid what it owed and that G&M has unnecessarily drawn out the case. Def. Matthews's Resp. at 4. But it is undisputed that Matthews took on this obligation, Pl.'s LR 56.1(a)(3) Stmt. ¶ 36, and he cites no authority for

---

4945, 2016 WL 6948374, at *2 (N.D. Ill. Nov. 26, 2016) (disregarding LR 56.1(b)(3)(C) statements that failed to cite to record material). The same is true for paragraphs 5 and 16.

why he should be relieved of it. But because the litigation is ongoing, the Court declines to rule on PCS's request for fees at this time.

## Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment [119] is granted in part and denied in part. The motion is granted as to Defendants' liability to PCS for breach of contract. The motion is denied as to the amount of damages and fees to which PCS is entitled. A status hearing is set for October 17, 2018, at 9:00 a.m. The parties should be prepared at the hearing to set a schedule for pretrial filings and a date for the pretrial conference and a jury trial.

**IT IS SO ORDERED.**  ENTERED  9/25/18

*[signature]*

_____

**John Z. Lee**
**United States District Judge**